**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PETER LE, CHARLES LYNCH, | ) | |
| DORIEN BAKER and DARRICK WILSON, | ) | |
| Individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | No.  1:25-cv-15609 |
| Plaintiffs, | ) | |
| | ) | Hon. April M. Perry |
| v. | ) | |
| | ) | Magistrate Judge Honorable |
| MCDONALD'S CORPORATION dba | ) | Maria Valdez |
| MCDONALD'S, a Delaware corporation; and | ) | |
| DOES 1 through 10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MCDONALD'S CORPORATION'S**
**MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Riley C. Mendoza
Tara D. Kennedy
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
(312) 704-7700
rmendoza@shb.com
tkennedy@shb.com

James P. Muehlberger
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
jmuehlberger@shb.com

*Attorneys for Defendant McDonald's Corporation*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION ............................................................................................... 1

SUMMARY OF ALLEGATIONS ....................................................................... 2

LEGAL STANDARD.......................................................................................... 4

ARGUMENT ...................................................................................................... 4

I.     The Complaint Must Be Dismissed in Its Entirety Because Plaintiffs Do Not
       Plausibly Allege the Name, Shape, or Marketing of the McRib Was Misleading or
       Deceptive. ................................................................................................ 4

       A.     Plaintiffs Do Not Allege McDonald's Has Ever Affirmatively Represented
              that the McRib Sandwich Contains Pork Rib Meat. ............................... 5

       B.     The Name and Shape of the McRib Are Not Likely to Deceive a
              Reasonable Consumer........................................................................... 6

              1.     Reasonable consumers are not likely to be misled by the name
                     "McRib." ..................................................................................... 7

              2.     Reasonable consumers would not be deceived by the shape of the
                     patty............................................................................................ 10

              3.     The totality of information and context available to consumers
                     further demonstrates that no reasonable consumer would be
                     deceived. ..................................................................................... 11

       C.     Plaintiffs Have Not Plausibly Shown that Reasonable Consumers Share
              the Same Understanding of "Pork Rib Meat."....................................... 13

       D.     Plaintiffs Fail to Plausibly Allege Any Concealment or Omission by
              McDonald's Regarding the McRib......................................................... 15

II.    Plaintiffs' Common Law Fraud Claims Fail for Several Additional Reasons.................. 16

       A.     Plaintiffs Fail to State a Claim for Fraudulent Misrepresentation
              (Count II). ............................................................................................. 16

       B.     Plaintiffs Fail to State a Claim for Fraud (Count IV). ............................ 17

       C.     Plaintiffs Fail to Allege Fraudulent Omission or Concealment (Count I). ........... 18

       D.     Plaintiffs Fail to State a Negligent Misrepresentation Claim (Count III). ............ 19

III. Plaintiffs' Warranty, Contract, and Unjust Enrichment Claims Fail for Additional Reasons As Well. ................................................................................................... 21

    A. Plaintiffs' Warranty Claims Fail for Lack of Pre-suit Notice (Counts V & VI). ............................................................................................. 21

    B. McDonald's Had No Reason to Know of Any "Particular Purpose" for the McRib, Defeating Plaintiffs' Implied Warranty Claim (Count V). ..................... 21

    C. Plaintiffs Fail to State an Express-Warranty Claim Because the Name "McRib" is Not an Affirmation of Fact or Promise (Count VI). .......................... 22

    D. Plaintiffs' Contract Claims Fail Because They Fail to Plausibly Allege that McDonald's is in Breach (Counts VII and VIII). .................................................. 23

    E. Plaintiffs' Unjust Enrichment Claim Fails For Several Additional Reasons (Count IX). ......................................................................................................... 24

IV. The Court Should Dismiss All Claims Seeking Equitable Relief. .................................... 26

    A. Plaintiffs Lack Standing to Pursue Injunctive Relief. ........................................... 26

    B. Plaintiffs Cannot Seek Restitution, Requiring Dismissal of Their UCL and FAL Claims (Counts XI and XII). .......................................................................... 26

CONCLUSION .................................................................................................................................. 27

**TABLE OF AUTHORITIES**

Page

**Cases**

*Acosta-Aguayo v. Walgreens Co.*,
2023 WL 2333300 (N.D. Ill. Mar. 2, 2023)..................................................................26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................4

*Avis Budget Car Rental, LLC v. JD2 Env., Inc.*,
2016 WL 3251394 (E.D.N.Y. 2016).................................................................................22

*Baldwin v. Star Scientific Star, Inc.*,
78 F. Supp. 3d 724 (N.D. Ill. 2015) ...................................................................................6

*BCBSM, Inc. v. Walgreen Co.*,
512 F. Supp. 3d 837 (N.D. Ill. 2021) ...............................................................................19

*Beardsall v. CVS Pharm., Inc.*,
953 F.3d 969 (7th Cir. 2020) .............................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................4

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) .........................................................................................4, 5

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) .............................................................................4, 11, 24

*Berarov v. Archers-Daniels-Midland Co.*,
2019 WL 277717 (N.D. Ill. Jan. 22, 2019) ......................................................................25

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) ...........................................................................................25

*Bower v. Jones*,
978 F.2d 1004 (7th Cir. 1992) .........................................................................................17

*Boyd v. TTI Floorcare N. Am.*,
230 F. Supp. 3d 1266 (N.D. Ala. 2011).............................................................................23

*Broge v. ALN Int., Inc.*,
2018 WL 6308194 (N.D. Cal. Dec. 3, 2018) ...................................................................16

*Brownmark Films, LLC v. Comedy Partners*,
    682 F.3d 687 (7th Cir. 2012) ........................................................................2, 12

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ....................................................................4, 17, 26

*Chiappetta v. Kellogg Sales Co.*,
    2022 WL 602505 (N.D. Ill. Mar. 1, 2022)..............................................7, 19, 26

*City of Rockford v. Mallinckrodt ARD, Inc.*,
    360 F. Supp. 3d 730 (N.D. Ill. 2019) ........................................................23, 24

*Cohen v. Am. Sec. Inc. Co.*,
    735 F.3d 601 (7th Cir. 2013) ............................................................................25

*Dana v. Hershey Co.*,
    180 F. Supp. 3d 652 (N.D. Cal. 2016) ..............................................................15

*DiLeo v. Ernst & Young*,
    901 F.2d 624 (7th Cir. 1990) ............................................................................16

*Eike v. Allergan, Inc.*,
    850 F.3d 315 (7th Cir. 2017) ..............................................................................2

*Erie Insurance Co. v. W.M. Barr & Co., Inc.*,
    523 F. Supp. 3d 1 (D.D.C 2021) ......................................................................22

*F. Corp. of N. Am. v. F., Ltd.*,
    903 F.2d 434 (7th Cir. 1990) ..............................................................................8

*Fezzani v. Bear, Stearns & Co., Inc.*,
    384 F. Supp. 2d 618 (S.D.N.Y. 2004)..............................................................17

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.*,
    218 Ill. 2d 326 (2006) ......................................................................................20

*Gallagher v. New York City Health & Hosp. Corp.*,
    2017 WL 4326042 (S.D.N.Y 2017)..................................................................19

*Grayson v. AT&T Corp.*,
    15 A.3d 219 (D.C. 2011) ....................................................................................6

*Guajardo v. Skechers USA, Inc.*,
    2021 WL 4302532 (C.D. Ill. Sept. 21, 2021) ..................................................15

*Guaranty Residential Lending, Inc. v. Int'l Mortgage Ctr.*,
    305 F. Supp. 2d 846 (N.D. Ill. 2004) ..............................................................19

*Halim v. Buffalo Wild Wings, Inc.*,
    2026 WL 444686 (N.D. Ill. Feb. 17, 2026) ................................................................ *passim*

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) ....................................................................... 5, 22

*In re Boeing 737 MAX Pilots Litig.*,
    638 F. Supp. 3d 838 (N.D. Ill. 2022) ............................................................................ 16

*In re McDonald's French Fries Litig.*,
    503 F. Supp. 2d 953 (N.D. Ill. 2007) ....................................................................... 21, 22

*In re Testosterone Replacement Therapy Prods.Liab. Litig. Coordinated Pretrial*
    *Proc.*, 2018 WL 4030586 (N.D. Ill. Aug. 23, 2018) ................................................... 22

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
    2021 WL 3666312 (S.D. Fla. Aug. 18, 2021) ............................................................... 12

*Karlinski v. Costco Wholesale Corp.*,
    616 F. Supp. 3d 753 (N.D. Ill. 2022) ............................................................... 13, 14, 20

*Kubicki on Behalf of Kubick v. Medtronic, Inc.*,
    293 F. Supp. 3d 129 (D.D.C. 2018) ............................................................................. 22

*LaSalle Bank Nat'l Assoc. v. Paramont Properties*,
    588 F. Supp. 2d 840 (N.D. Ill. 2008) ........................................................................... 24

*Lederman v. Hershey Co.*,
    2022 WL 3573034 (N.D. Ill. Aug. 19, 2022) .......................................................... 13, 17

*Lisowski v. Henry Thayer Co., Inc.*,
    501 F. Supp. 3d 316 (W.D. Pa. 2020) .......................................................................... 23

*Marache v. Akzo Nobel Coatings, Inc.*,
    2010 WL 908467 (S.D.N.Y. 2010) .............................................................................. 22

*Mathison v. Bumbo*,
    2008 WL 8797937 (C.D. Cal. 2008) ............................................................................ 22

*McDonald v. Elkholy*,
    2017 WL 3503385 (E.D.N.Y. July 27, 2017) ............................................................. 16

*McKinnis v. Kellogg USA*,
    2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ............................................... 8, 10, 11, 22

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ........................................................................................... 7

*Muller v. Blue Diamond Growers*,
    683 F. Supp. 3d 933 (E.D. Mo. 2023) ............................................................8, 22

*Myers-Taylor v. Ornua Foods N. Am., Inc.*,
    2019 WL 424703 (N.D. Cal. Feb. 4, 2019) ...........................................................8

*National Union Fire Ins. Co. of Pittsburg, PA v. Cambridge Integ. Servs. Grp., Inc.*, 171 Cal. App. 4th 35 (2009) ......................................................................19

*Ollivier v. Alden*,
    634 N.E.2d 418 (Ill. App. 1994) ..........................................................................16

*Orix Credit All., Inc. v. Taylor Mach. Works, Inc.*,
    125 F.3d 468 (7th Cir. 1997) ...............................................................................20

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ...............................................................................24

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ...............................................................16, 24, 25

*Prime Leasing, Inc. v. Kendig*,
    332 Ill. App. 3d 300 (2002) .................................................................................17

*PRM Realty Grp. v. Wood*,
    2002 WL 1792063 (N.D. Ill. Aug. 5, 2002) .......................................................16

*Publications Int'l Ltd. v. Mindtree Ltd.*,
    2014 WL 3687316 (N.D. Ill. July 24, 2014) .......................................................18

*Puri v. Costco Wholesale Corp.*,
    2021 WL 6000078 (N.D. Cal. Dec. 20, 2021) ....................................................14

*Regan v. Spicer HB, LLC*,
    134 F. Supp. 3d 21 (D.D.C. 2015) ......................................................................16

*Rubenstein v. The Gap, Inc.*,
    14 Cal. App. 5th 870 (2d Dist. 2017) .......................................................6, 13, 15

*Rudolph Int'l, Inc. v. Realys, Inc.*,
    482 F.3d 1195 (9th Cir. 2007) ...............................................................................8

*Rudy v. D.F. Stauffer Biscuit Co.*,
    666 F. Supp. 3d 706 (N.D. Ill. 2023) ........................................................ *passim*

*Rugg v. Johnson & Johnson*,
    2018 WL 3023493 (N.D. Cal. 2018) ...................................................................22

*Scherr v. Marriott Int'l, Inc.*,
    703 F.3d 1069 (7th Cir. 2013) ...........................................................................26

*Shaw v. Hyatt Int'l Corp.*,
    461 F.3d 899 (7th Cir. 2006) .............................................................................25

*Smith v. Ford Motor Co.*,
    749 F. Supp. 2d 980 (N.D. Cal. 2010) ...............................................................24

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .............................................................................26

*Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*,
    897 F.3d 797 (7th Cir. 2018) .............................................................................18

*Sundberg v. TTR Realty, LLC*,
    109 A.3d 1123 (D.C. 2015) ...............................................................................19

*Thomas v. Today's Growth Consultant, Inc.*,
    2018 WL 3496095 (N.D. Ill. July 20, 2018)......................................................23

*Toulon v. Continental Casualty*,
    877 F.3d 725 (7th Cir. 2017) .....................................................................5, 6, 18

*Tricontinental Indust. v. PricewaterhouseCoopers*,
    475 F.3d 824 (7th Cir. 2007) ........................................................................18, 19

*Turner v. GAC Star Quality, LLC*,
    671 F. Supp. 3d 897 (N.D. Ill. 2023) .................................................................20

*Vanzant v. Hill's Pet Nutrition, Inc.*,
    934 F.3d 730 (7th Cir. 2019) .............................................................................24

*Virginia Acad. of Clinical Psychologists v. Group. Hosp. & Med. Servs., Inc.*,
    878 A.2d 1226 (D.C. 2005) ...............................................................................17

*Wach v. Prairie Farms Dairy*,
    2022 WL 1591715 (N.D. Ill. May 19, 2022) ................................................11, 13

*Warren v. Coca-Cola Co.*,
    2023 WL 3055196 (S.D.N.Y. Apr. 21, 2023).......................................................7

*Weisblum v. Prophase Labs, Inc.*,
    88 F. Supp. 3d 283 (S.D.N.Y. 2015)..................................................................20

*Werbel ex rel. v. Pepsico, Inc.*,
    2010 WL 2673860 (N.D. Cal. July 2, 2010).................................................8, 10

*Wertymer v. Walmart, Inc.*,
   142 F.4th 491 (7th Cir. 2025) ........................................................................5, 7

*Wertymer v. Walmart, Inc.*,
   2024 WL 2117468 (N.D. Ill. May 9, 2024), *aff'd*, 142 F.4th 491
   (7th Cir. 2025)............................................................................................13

*West v. Rheem Mfg. Co.*,
   765 F. Supp. 3d 976 (C.D. Cal. 2025) .......................................................17

*White v. Daimler Chrysler Corp.*,
   368 Ill. App. 3d 278 (1st Dist. 2006) .........................................................13

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012) .................................................................18, 20

*Williamson v. Curran*,
   714 F.3d 432 (7th Cir. 2013) ...................................................................2, 12

*Zahora v. Orgain LLC*,
   2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) ................................................5

*Zeigler v. WellPet LLC*,
   526 F. Supp. 3d 652 (N.D. Cal. 2021) .......................................................20

**Statutes**

810 ILCS 5/2-204 ................................................................................................25

15 U.S.C. § 1052 ...................................................................................................8

Cal. Com. Code § 2607(3)(A)...............................................................................21

California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ....................... *passim*

California False and Misleading Advertising Law, Cal. Bus. & Prof. Code
   §§ 17500, *et seq.* ...................................................................... *passim*

California Unfair Competition Law, Cal. Bus. & Prof. Code
   §§ 17200, *et seq.* .............................................................3, 13, 15, 26

D.C. Code § 28:2-607(3)(a) .................................................................................21

District of Colombia Consumer Protection Procedures Act,
   D.C. Code §§ 28-3901, *et seq.* ...............................................................3, 6

Illinois Consumer Fraud and Deceptive Business Practices Act,
   815 ILCS 505/1, *et seq.*.................................................................3, 6, 13, 15

New York General Business Law § 349 ................................................................3, 5, 6

New York General Business Law § 350 ...................................................................3, 5

NY U.C.C. § 2-607(3)(a) ..............................................................................................21

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................ *passim*

**INTRODUCTION**

McDonald's has sold its popular boneless pork sandwich, the McRib® sandwich ("McRib"), periodically for more than 40 years. According to Plaintiffs, they just learned that the pork patty in the McRib, which is fancifully *shaped* like a rack of pork ribs, does not consist of pork ribs. They don't allege that they thought the McRib would contain bones, like real pork ribs do, or that they hoped it would. They allege the name of the product and the shape of the patty led them to believe it would contain not just real pork but real pork *rib* meat. Had they known the truth, they claim, they would not have bought a McRib or would have paid less. Plaintiffs further claim McDonald's bamboozled millions of other McRib buyers into believing the same thing.

But reasonable consumers are not fooled by distinctive product names. For one, trademarks like McRib cannot proceed to registration if they are "deceptively misdescriptive" of the product. And reasonable consumers understand names like "McRib," "Shamrock Shake," "Crunch Berries," or "boneless wings" are not representations that those products are made with rib meat, shamrocks, berries, or wing meat. They identify the source of the product. Indeed, courts routinely reject claims premised on consumer's unreasonable interpretations of product names. *See, e.g.*, *Halim v. Buffalo Wild Wings, Inc.*, 2026 WL 444686, at *4 (N.D. Ill. Feb. 17, 2026) (dismissing because "boneless wings" is a widely understood name and not misleading). This Court should do the same, because "McRib" is a decades-old, source-identifying trademark of a product (i.e., for a boneless pork patty sandwich), not a promise the patty contains any particular cut of pork meat.

Notably, Plaintiffs don't allege that McDonald's has ever claimed the McRib is made of any particular cut of pork. As their own allegations show, McDonald's describes the McRib as made with "pork" or a "pork patty," and those descriptions are truthful. That Plaintiffs might subjectively prefer the McRib be made of a certain cut of pork doesn't turn McDonald's truthful marketing into consumer fraud. "The fact that a seller does not sell the product that you want, or

at the price you'd like to pay, is not an actionable injury; it is just regret or disappointment." *Eike v. Allergan, Inc*., 850 F.3d 315, 318 (7th Cir. 2017).

All of Plaintiffs' claims fail because they have not plausibly alleged conduct that would have misled a reasonable consumer. Specific claims also fail for other reasons. For example:

- Plaintiffs have failed to plead the necessary intent or scienter for their fraudulent misrepresentation and fraud claims.

- The negligent misrepresentation claim is barred by the economic loss doctrine and fails because Plaintiffs have not alleged the requisite duty.

- Plaintiffs fail to allege pre-suit notice for either of their warranty claims and fail to allege they purchased the McRib for a purpose other than its ordinary use (implied warranty) or any promise that the McRib would contain pork rib meat (express warranty).

- The contract claims fail because Plaintiffs do not plausibly allege that McDonald's ever promised the McRib would contain pork rib meat.

- The unjust enrichment claim fails because it is not a separate cause of action, Plaintiffs do not allege any inequity, and it is barred by the express sales contract.

## SUMMARY OF ALLEGATIONS

McDonald's has offered its iconic McRib sandwich periodically for over four decades. Compl. ¶ 18. During "McRib season," typically in the fall, McDonald's may offer a limited release of the McRib at select locations. *See id.* ¶¶ 20–22 nn.8–14. Loyal fans anticipate this so highly that there is a website, "mcriblocator.com," dedicated to helping them find locations offering it. *Id.* ¶ 5 n.5. The McRib is a seasoned boneless pork sandwich known for its "tangy" barbeque sauce. *See id.* ¶ 2 n.1.[1] The sauce is so popular that McDonald's has sold it by the half gallon. *Id.* ¶ 20 n.8. McDonald's publishes the ingredients of the McRib sandwich (as it does for all menu items) on

---

[1] Citing *McRib,* MCDONALD'S, https://www.mcdonalds.com/us/en-us/product/mcrib.html#accordionc921f9207b-item-842cb18782 (last visited Feb. 8, 2026) (attached hereto as **Exhibit 1**).

The court may consider all websites cited in the Complaint. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (court may consider documents that are attached to the complaint" and "that are central to the complaint and are referred to in it"); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (incorporation-by-reference doctrine provides that defendant may rely on documents mentioned in complaint in 12(b)(6) motion).

its website, on in-restaurant kiosks, and its mobile application. *See, e.g.*, **Ex. 1**. The McRib pork patty contains "pork, water, salt, dextrose and rosemary extract." *Id.* Plaintiffs allege no facts showing that McDonald's has ever described the McRib as containing rib meat.

Each Plaintiff alleges that, around November or December 2024, he or she bought at least one McRib. Compl. ¶¶ 9–12. The crux of their claims is that McDonald's use of the word "rib" in the trademark McRib combined with the patty's "distinctive shape"—which resembles a rack of ribs, though it obviously is not, because the patty is boneless—misleads reasonable consumers into thinking the McRib contains some quantity of "actual pork rib meat." *Id.* ¶¶ 2, 4, 7. According to Plaintiffs, "actual pork rib meat" means "spareribs" or "baby back ribs," which they allege are "premium" cuts of pork compared to cuts like "loin" or "butt." *Id.* ¶ 3. Based on this, they claim they were deceived into buying the McRib at a premium price, and had they known the truth, they would not have purchased the McRib or would only have paid substantially less. *Id.* ¶¶ 9–12, 21.

Plaintiffs plead sixteen counts against McDonald's: (1) fraudulent omission/concealment; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) fraud; (5) breach of warranty for fitness for a particular purpose; (6) breach of express warranty; (7) breach of contract; (8) breach of the duty of good faith and fair dealing; (9) quasi contract/unjust enrichment; (10) violation of the California Consumer Legal Remedies Act ("CLRA"); (11) violation of California False and Misleading Advertising Law ("FAL"); (12) violation of California Unfair Competition Law ("UCL"); (13) violation of New York General Business Law § 349 ("N.Y. GBL § 349"); (14) violation of New York General Business Law § 350 ("N.Y. GBL § 350"); (15) violation of Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); and (16) violation of the District of Colombia Consumer Protection Procedures Act, ("CPPA"). This brief sometimes refers to Counts I–IV collectively as the "Common Law Fraud Claims" and to Counts X–XVI as the "Consumer Protection Law Claims."

**LEGAL STANDARD**

A complaint must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires more than mere "labels and conclusions." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Unless the complaint pleads sufficient facts to cross the line "from conceivable to plausible," it must be dismissed. *Id.* at 570. In considering deceptive conduct claims like those here, courts "should take into account all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020); *see also Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (courts must consider "the totality of the information made available to the plaintiff.") A claim based on "fanciful interpretations" of advertising should be dismissed. *Bell*, 982 F.3d at 477.

When, as here, claims "rest[] on allegations of deceptive conduct," the heightened pleading standard of Rule 9(b) applies. *Benson*, 944 F.3d at 646. That is true regardless of the label applied to such claims. In particular, though consumer-protection statutes typically also prohibit "unfair" practices, if allegations are grounded in fraud, then Rule 9(b) applies. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

**ARGUMENT**

I.    **The Complaint Must Be Dismissed in Its Entirety Because Plaintiffs Do Not Plausibly Allege the Name, Shape, or Marketing of the McRib Was Misleading or Deceptive.**

Each of Plaintiffs' claims is premised on the assertion that the shape of the McRib and its trademarked name is misleading. This is clear for the Consumer Protection Law and Common Law Fraud Claims, all of which require proof either that Plaintiffs were deceived or that a reasonable consumer likely would have been deceived. For example, Plaintiffs bring claims under seven consumer protection statutes from four different states, but each requires the same core element of

4

a deceptive or unfair act. *See Bell*, 982 F.3d at 474–75 (requiring allegation of deceptive act for CLRA, UCL, N.Y. GBL §§ 349, 350, and ICFA, among others); *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025) (ICFA). Similarly, the Common Law Fraud Claims require proof that McDonald's made a false statement of material fact or concealed a material fact. *Wertymer*, 142 F.4th at 495 (fraudulent misrepresentation; noting consumer protection/common law claims all "require as a first step that the defendant engaged in some act that was false [or] deceptive"); *Toulon v. Continental Casualty* Co., 877 F.3d 725, 737 (7th Cir. 2017) (fraudulent omission); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 759–60 (N.D. Ill. 2015) (dismissing common law fraud and ICFA claims together). Last, as pled, the warranty, unjust enrichment, and contract claims are likewise based on allegations of deceptive conduct.[2] *See, e.g.*, *Zahora v. Orgain LLC*, 2021 WL 5140504, at *5 (N.D. Ill. Nov. 4, 2021) (dismissing warranty/unjust enrichment and fraud/ICFA claims for same reasons when premised on same allegations of deception).

Accordingly, courts routinely evaluate these types of claims together, and they rise and fall together. Here, Plaintiffs' claims should all be dismissed because they have not plausibly alleged that the name and/or shape of the McRib misleads reasonable consumers.

### A. Plaintiffs Do Not Allege McDonald's Has Ever Affirmatively Represented that the McRib Sandwich Contains Pork Rib Meat.

Plaintiffs do not point to a single affirmative statement by McDonald's saying that the McRib contains rib meat. To the contrary, their own allegations and sources show that McDonald's website lists the ingredients in the McRib patty as pork, water, salt, dextrose and rosemary extract, and that McDonald's has truthfully described the McRib as a "boneless pork sandwich" with a

---

[2] *See* Compl. ¶ 110 (implied warranty claim based on "misleading naming, advertising, and marketing" of McRib); *id.* ¶ 123 (express warranty claim based on "false and misleading" advertising); *id.* ¶¶ 131–33 (breach of contract claim premised on allegations that name and shape of McRib were misleading); *id.* ¶ 138 (same for good faith claim); *id.* ¶ 147 (same for unjust enrichment claim).

5

patty that is made from "pork" for decades. *See e.g.*, Compl. ¶ 2 n.1 (citing **Ex. 1**, McDonald's website listing ingredients); *id.* ¶ 22 n.14 (citing an independent review of the sandwich).

So, to the extent Plaintiffs premise their claims on unsupported and conclusory allegations that McDonald's "misrepresented" the contents of the McRib, the claims must fail. *See Toulon*, 877 F.3d at 736 (dismissing fraudulent misrepresentation claim when plaintiff had "not identified any explicit, false statements of material fact"); *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 719 (N.D. Ill. 2023) (finding no "untruths" alleged where product was named "Lemon Snaps," package was yellow and had photos of lemons but cookies contained "no appreciable amount of lemon"); *Baldwin v. Star Scientific Star, Inc.*, 78 F. Supp. 3d 724, 737 (N.D. Ill. 2015) (dismissing ICFA claim "replete with allegations recounting vague, nonspecific statements" defendant made about the product's supposed benefits but failed to identify "a single actual misrepresentation that was communicated to Plaintiff"); *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 881 (2d Dist. 2017) (dismissing CLRA claim that alleged "no advertising or representation of any kind that [defendant] made about the characteristics or quality of its [product]" and did not allege "a single affirmative representation" by defendant "other than a true one").

## B. The Name and Shape of the McRib Are Not Likely to Deceive a Reasonable Consumer.

With no false statement to rely on, Plaintiffs resort to arguing that use of the word "rib" in the coined and trademarked name "McRib," combined with the shape of the pork patty, somehow misleads consumers (and misled them) into believing the McRib is made of "actual pork rib meat." Compl. ¶¶ 2, 4. But reliance has to be reasonable, and it must be plausible that the alleged act is "likely to deceive reasonable consumers." *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 972–73 (7th Cir. 2020) (applying reasonable consumer standard to CLRA, FAL, UCL, N.Y. GBL § 349, ICFA); *Grayson v. AT&T Corp.*, 15 A.3d 219, 251 (D.C. 2011) (applying reasonable consumer standard to CPPA). The "reasonable consumer" standard "requires a *probability* that a significant

6

portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Wertymer*, 142 F.4th at 495 (emphasis added).

Accordingly, courts in this District and elsewhere consistently hold that coined product names do not promise particular ingredients and consistently dismiss claims based on unreasonable or fanciful interpretations of advertising or when information available to consumers dispels their interpretation. Just last week, this District dismissed claims that the product name "boneless wings" deceptively implied de-boned wing meat, finding the widely understood product name was not deceptive. *Halim*, 2026 WL 444686 at *4 (dismissing ICFA, fraud, express warranty, and unjust enrichment claims because reading of "boneless wings" as being made of de-boned wing meat was unreasonable in light of information available); *see also Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *5 (N.D. Ill. Mar. 1, 2022) (dismissing ICFA claim based on "unreasonable and inactionable" interpretation of label); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (affirming dismissal of unreasonable interpretation, noting "information available to a consumer is not limited to the physical label and may involve contextual inferences"); *Warren v. Coca-Cola Co.*, 2023 WL 3055196, at *4-7 (S.D.N.Y. Apr. 21, 2023) (dismissing fraud and consumer protection claims because plaintiff's unreasonable belief that a margarita hard seltzer contained tequila was undermined by context). Here, the terms "unreasonable," "fanciful," and "implausible" all apply to Plaintiffs' allegations because the McRib is a decades-old, source-identifying name for a boneless pork patty sandwich, not a promise of sparerib or baby-back rib meat.

1.   Reasonable consumers are not likely to be misled by the name "McRib."

Plaintiffs' assertion that the name McRib is deceptive or misleading fails because, given the overall context, reliance on that product name as a description of ingredients is not reasonable. As an initial matter, "McRib" is a registered trademark, and as "a prerequisite to acquiring a

7

trademark registration in the United States, a mark must not be deceptively misdescriptive of the product." *Myers-Taylor v. Ornua Foods N. Am., Inc.*, 2019 WL 424703, at *4 (N.D. Cal. Feb. 4, 2019) (citing 15 U.S.C. § 1052(e)(1)). Nor may the mark be "merely descriptive," 15 U.S.C. § 1052(e)(1), or consist of "deceptive" matter, *id.* § 1052(a). Indeed, merely descriptive terms "generally do not enjoy trademark protection" unless they acquire a "'secondary meaning' in the minds of consumers, i.e., [they] become distinctive of the trademark applicant's goods in commerce." *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1197–98 (9th Cir. 2007) (citation omitted); *see also F. Corp. of N. Am. v. F., Ltd.*, 903 F.2d 434, 439, 443 (7th Cir. 1990) (trademark protected only "if it is more fanciful or arbitrary than it is descriptive"). In short, a trademarked name identifies the source of a product.

In line with these principles, courts have consistently ruled that reasonable consumers would not equate a trademarked name with a description of a product's ingredients in similar circumstances. For example, one court held that "a reasonable consumer would not likely be deceived by the Smokehouse® trade name into believing that the almonds were smoked in a smokehouse," instead, they might plausibly view the name as indicating they were "purchasing almonds with a smoke flavor." *Muller v. Blue Diamond Growers*, 683 F. Supp. 3d 933, 943 (E.D. Mo. 2023); *see also Werbel ex rel. v. Pepsico, Inc.*, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (reasonable consumer would not assume from name "Cap'n Crunch's Crunch Berries" that the product contained real berries because "Berries" was always preceded by "Crunch" to form term "Crunch Berries"); *McKinnis v. Kellogg USA*, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (reasonable consumers would not view trademark name "Froot Loops" as "describing ingredients in cereal" where "froot" (fanciful spelling of "fruit") appeared solely "in the trademarked name of the cereal, not on its own or as a description of the actual ingredients").

Similarly, reasonable consumers understand that the trademarked name "McRib®" does not promise that the product contains rib meat. It is a coined distinctive term meant to identify the source of the product (*i.e.*, McDonald's, as evidenced by the "Mc" prefix) and evoke the taste of barbequed pork. *See* Compl. ¶ 7 (citing article noting that "[t]he McRib's direct inspiration was Southern BBQ"). The term "McRib" had no meaning before McDonald's coined it; it was created to identify this specific product, namely McDonald's version of a barbeque pork patty sandwich, which is formed in the shape of a rack of ribs. If courts accepted Plaintiffs' theory that a trademark like McRib is an actionable representation of ingredients, it would punish the very distinctiveness trademark law encourages and is designed to protect.

Trademarked or not, *Halim* demonstrates that use of the word "rib" in "McRib" is not misleading. There, the court held plaintiff's reading of the menu item "boneless wings" as consisting of de-boned chicken wing meat was unreasonable, despite the use of the word "wing." 2026 WL 444686, at *3–4. The court rejected the assertion that the name "boneless wing" was "literally false," noting words may have multiple meanings. *Id.* at *3 (observing "buffalo wing" refers to the sauce used not that "wing" is made of buffalo meat). Regardless, even if the name "boneless wings" was false, "[m]any literally false statements are not deceptive." *Id.* at *3. The court found "boneless wings" not deceptive, because it was "clearly a fanciful name, because chickens ***do*** have wings, and those wings have bones." *Id.* at 4. The same is true here—a pig does have ribs, and those ribs have bones, so the name "McRib" clearly does not describe bone-in rib meat, and consumers would not reasonably think the McRib was made of de-boned rib meat, just as reasonable consumers would not reasonably think boneless wings consisted of de-boned chicken wing meat. *Id.*; *see also Rudy*, 666 F. Supp. 3d at 719 (dismissing ICFA claim because "[n]either pictures of lemons nor the color yellow or text stating 'Lemon' gives reasonable

consumers the impression that the product contains any particular amount of actual lemon—and surely not the specific expectation of a 'non-de minimis' amount.")

2.    <u>Reasonable consumers would not be deceived by the shape of the patty.</u>

Plaintiffs' contention that the rack-of-rib-like shape of the McRib pork patty somehow conveys that the sandwich necessarily contains rib meat is also unreasonable, to say the least. If anything, the shape undermines Plaintiffs' claim. It is obvious to any reasonable person that the McRib sandwich's boneless pork patty, though shaped like a rack of ribs, is not actually a rack of ribs. It could not be eaten as a sandwich if it were. Since it does not contain bones, the shape could only be due to the manufacturing process, which involves molding a meat patty from pork. Plaintiffs themselves cite ads that clearly show this: a molded meat patty. *See* Compl. ¶ 20 (Figures 1–4); *id.* ¶ 22 (Figure 5–6). *Halim* is again instructive. There, the court looked to the overall context of boneless wings, including the fact that the product had been sold by the defendant since 2003 and consumers were familiar with the common-sense proposition that "boneless wings" were not deboned chicken wings, just as "a person eating 'chicken fingers' would know that he had not been served fingers." 2026 WL 444686, at *4.

Similarly, in *Werbel*, the court held that a reasonable consumer would not be fooled "into believing that Cap'n Crunch cereal derives nutrition from actual fruit" merely because the product was "shaped to resemble berries." 2010 WL 2673860, at *3. The court deemed this theory "nonsense." *Id.* Not only was the word "berries" always preceded by "Crunch" to form the full product name "Crunch Berries," the image on the box showed "four cereal balls with a rough, textured surface in hues of deep purple, teal, chartreuse green and bright red," showing that no reasonable consumer would be deceived into thinking Crunch Berries was made with real berries. *Id.* Another court rejected a similar claim about "Froot Loops." *See McKinnis*, 2007 WL 4766060, at *4 (reasonable consumers would not "view the trademark 'FROOT LOOPS' name as describing

the ingredients" and allegation that "cereal pieces themselves resemble fruit is not rational, let alone reasonable").

Just like reasonable consumers understand that boneless wings are not made of de-boned chicken wings and "Crunch Berries" are not made of berries, they understand that the McRib patty is not made of sparerib or baby back rib meat (and McDonald's never promised it was). As in *Werbel*, the name is trademarked, and "rib" is always preceded by "Mc," which a reasonable consumer understands to be a product name, not an ingredient list. Further, a reasonable consumer would not believe the shape and texture of the patty implies actual pork ribs or pork rib meat.

3. <u>The totality of information and context available to consumers further demonstrates that no reasonable consumer would be deceived.</u>

Plaintiffs' allegations that McDonald's misled reasonable consumers likewise fails when "looked upon in light of the totality of the information made available to the plaintiff," *Benson*, 944 F.3d at 646, and an ordinary consumer's "day-to-day marketplace expectations." *Wach v. Prairie Farms Dairy,* 2022 WL 1591715, at *5 (N.D. Ill. May 19, 2022). In other words, Plaintiffs cannot claim they were deceived by the name McRib or the shape of the pork patty while ignoring the readily available information that would dispel their unreasonable understanding.

As a matter of common sense, Plaintiffs cannot assert that reasonable consumers were likely to be deceived when the ingredients of the McRib are publicly available and easily accessible, and McDonald's has never described the McRib as containing any type of rib meat. Courts have held that consumer deception "must be probable, not just possible." *McKinnis*, 2007 WL 4766060, at *3. What's more, McDonald's website, upon which Plaintiffs rely, makes clear that the McRib patty consists of "ground pork that is formed into a patty" and merely "resembles the shape of a rack of ribs" because "it's fun."[3]

---

[3] *See* https://www.mcdonalds.com/us/en-us/faq/how-is-your-mcrib--patty-formed.html (last visited Feb. 24, 2026). The court may properly take judicial notice of this page on the McDonald's website because Plaintiffs cite to

11

Plaintiffs' own allegations again defeat their claims. They cannot plausibly allege that McDonald's obscured the contents of the McRib when they rely on articles demonstrating it has sold the McRib for over 40 years and the McRib and its contents are the subject of frequent publicized reporting. For example, Plaintiffs cite decades of articles (*e.g.*, from 2009, 2011, and 2020) accepting as settled that the McRib is not made of rib meat but instead is a molded pork meat patty. *See* Compl. ¶ 2 n.1 (citing Moser article, attached as **Ex. 2** ("everyone's in on the joke. It's clearly not a rib"); and Durden article, attached as **Ex. 3**, among others); *id.* ¶ 22 n.14; *id.* ¶¶ 34–35 n. 15–16. Thus, the McRib is not some "niche product for which a consumer would need to do extensive research to figure out the truth." *Halim*, 2026 WL 444686, at *4 (reading "boneless wings" to mean wing meat was unreasonable because "boneless wings are not new," have been around since before the turn of the century, and defendant "sold them since 2003"). Courts have rejected claims that reasonable consumers are deceived where the so-called deceptive practice "has been widely publicized[.]" *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL 3666312, at *10 (S.D. Fla. Aug. 18, 2021) (dismissing claim that defendant misrepresented itself as "locally owned craft brewery" when corporate ownership was "widely publicized" since inception).

What's more, if a reasonable consumer was concerned with the absence of pork rib meat, one would expect sales of the McRib to drop off after articles like those cited by Plaintiffs. But Plaintiffs do not allege that anything like that has happened and instead admit that the return of the McRib each year continues to inspire excitement in consumers. *See* Compl. ¶ 1.[4]

---

www.mcdonalds.com in their Complaint, and that website is central to their Complaint. *See Williamson*, 714 F.3d at 436; *see also Brownmark Films, LLC*, 682 F.3d at 690.

[4] Likewise, Plaintiffs' allegations that the limited availability of the McRib, and marketing of the McRib "as a special, limited-time item" somehow deceives consumers is not only conclusory but refuted by context. Any contention that the limited-time availability of the McRib deters scrutiny into its ingredients is flatly contradicted by articles and blogs cited in the Complaint discussing that precise subject. What's more, there is nothing misleading or deceptive about marketing the McRib as limited-availability because it is in fact only available on a limited basis.

### C. Plaintiffs Have Not Plausibly Shown that Reasonable Consumers Share the Same Understanding of "Pork Rib Meat."

Plaintiffs also fail to adequately establish reasonable consumer expectations for "pork rib meat." Plaintiffs describe "rib meat" and declare the "two main types of pork rib meat are spareribs" and "baby back ribs." Compl. ¶ 3. They then assume, with no support, that reasonable consumers understand that "actual pork rib meat" consists of those two cuts. Because that assumption is entirely conclusory and lacks any factual support, the Court should not credit it. *See Wertymer v. Walmart, Inc.*, 2024 WL 2117468, at *4 (N.D. Ill. May 9, 2024), *aff'd*, 142 F.4th 491 (7th Cir. 2025) (sources on potential characteristics of "raw" honey insufficient to satisfy reasonable consumer standard absent "facts that make it plausible that consumers expect 'raw' honey to conform to these standards"); *Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 762 (N.D. Ill. 2022) (disregarding conclusory statements about consumer expectations); *Wach*, 2022 WL 1591715, at *5–7 (same); *Lederman v. Hershey Co.*, 2022 WL 3573034, at *4 (N.D. Ill. Aug. 19, 2022) (same). Further, in the context of a ground pork patty, it is not plausible that rib meat of any kind is materially better than all other cuts of pork.[5]

Further, to the extent Plaintiffs assert that spare and baby back ribs are "premium" cuts of pork, they rely solely on the USDA's National Daily Pork Report ("Report"). Compl. ¶ 3. They allege that "on November 17, 2025, pork 'rib' meat was valued at $152.32 per 100 pounds, while pork 'butt' was only valued at $108.84 and pork 'loin' was only valued at $85.90." *Id.* But the Report undermines Plaintiffs' claims for several reasons. First, it does not include any definition

---

[5] Notably, the Common Law Fraud Claims and Consumer Protection Act Claims require Plaintiffs to show not only a misrepresentation but also that the misrepresentation was of a material fact, or material to reasonable consumers. *See e.g.*, *Rubenstein*, 14 Cal. App. 5th at 878–80 (dismissing UCL, FAL, and CLRA claims with no showing fact was material to consumers); *White v. Daimler Chrysler Corp.*, 368 Ill. App. 3d 278, 286-87 (1st Dist. 2006) (dismissing ICFA claim because plaintiff failed to allege materiality of allegedly omitted fact with particularity). Because Plaintiffs have failed to show any misrepresentation, nor that reasonable consumers would expect a specific type of pork rib meat to be in the McRib, they likewise fail to establish that the absence of baby back or sparerib meat in the McRib would be material to reasonable consumers.

of "rib" or "rib meat" and the "Rib" category correlates solely to spareribs and makes no mention of baby back ribs. *See* USDA, *National Daily Pork Report FOB Plant – Negotiated Sales – Afternoon*, https://www.ams.usda.gov/mnreports/ams_2498.pdf (last visited Feb. 10, 2026). Second, Plaintiffs do not allege that the McRib is made from the "butt" or "loin" cuts they cite as "lower-quality." Compl. ¶ 3. Third, the Report makes clear there are many types of pork cuts referred to as "ribs," which are listed under various categories; for example, "Backribs" and "Riblets" under the "loin" category and "Backribs" and "Trmd Sparerib" under the "Added Ingredients" category. *Id.* Simply put, Plaintiffs' subjective interpretation of what "actual pork rib meat" means is not the plausible understanding of all reasonable consumers.

Nor do Plaintiffs' cursory references to consumer surveys allegedly conducted by their "survey expert" plausibly establish the views of a reasonable consumer or any deception. *See* Compl. ¶¶ 29–32. Plaintiffs' survey allegations are conclusory and methodologically opaque. They allege nothing about who the respondents were or how they were selected, nor the survey's format, prompts, or neutrality. Even what little information Plaintiffs do provide indicates a lack of neutrality, as they list "rib meat" and "pork" separately, when rib meat presumably *is* pork meat (or beef). *Id.* ¶ 29. Courts have found similarly sparse allegations about surveys conducted by plaintiffs insufficient to support a deceptive advertising claim. *See, e.g.*, *Karlinski*, 616 F. Supp. 3d at 762–63 (rejecting bare survey allegations lacking design details and noting survey allegations did not show plaintiff's "definition of chocolate aligns with a reasonable consumer's expectations"); *Puri v. Costco Wholesale Corp.*, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021) (rejecting survey allegations as insufficient because they failed to "include important details such as exactly what questions the survey asked or what its methodology entailed").

### D. Plaintiffs Fail to Plausibly Allege Any Concealment or Omission by McDonald's Regarding the McRib.

Plaintiffs' claims also fail to the extent they rely on "omission" or "concealment" because Plaintiffs do not plausibly allege any material omission by McDonald's. They again rely solely on conclusory assertions, such as baldly declaring that McDonald's "deliberately avoids telling the truth to consumers" (Compl. ¶ 24) or "has never clearly disclosed the truth to its customers: that the McRib does not contain *any* meaningful amount of actual pork rib meat" (*id.* ¶ 26). Yet their own allegations demonstrate McDonald's concealed nothing. As discussed above, Plaintiffs' sources establish that McDonald's publishes the ingredients of the McRib on its website, app, kiosks, and elsewhere, and that consumers are aware the McRib contains a pork patty. This further warrants dismissal of any claim for omission or concealment. *See Guajardo v. Skechers USA, Inc.*, 2021 WL 4302532, at *3 (C.D. Ill. Sept. 21, 2021) (ICFA claim dismissed for failure to allege "any direct statements" that contained "material omissions"); *Rubenstein*, 14 Cal. App. 5th at 876–81 (dismissing FAL, UCL, and CLRA claims where there was no affirmative misrepresentation or omission by defendant, noting omission "must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose"); *Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 664 (N.D. Cal. 2016) (duty to disclose under CLRA limited "to issues of product safety, unless disclosure is necessary to counter an affirmative representation").[6]

---

[6] Further, to the extent Plaintiffs allege that McDonald's concealed the fact that the McRib contains ingredients like heart, tripe, and scalded stomach, those allegations are unsupported by their purported sources and should be rejected outright. The only citations provided—the Michael Durden article (**Ex. 3**) and Whet Moser article (**Ex. 2**)—do not contain substantiation for the allegation that heart, tripe and scalded stomach are in a McRib. *See* Compl. ¶¶ 2, 23. The Durden article cites the Moser article as its source for those claims but the Moser article does not claim those items are in the McRib. Instead, it states that these things *might be* found generally in restructured meat products. Those allegations are false and must be disregarded.

## II.     Plaintiffs' Common Law Fraud Claims Fail for Several Additional Reasons.

As discussed above, each of Plaintiffs' Common Law Fraud Claims fails for failure to allege any deceptive or false statement or omission by McDonald's. Each of these claims fails for additional, independent reasons as well, as set forth below.

### A.     Plaintiffs Fail to State a Claim for Fraudulent Misrepresentation (Count II).

To state a claim for fraudulent misrepresentation Plaintiffs must allege: "(1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." *In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 864 (N.D. Ill. 2022).[7] Claims for fraudulent misrepresentation are subject to Rule 9(b)'s heightened "particularity" pleading standard. *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011). Rule 9(b) requires Plaintiffs to state "with particularity" any "circumstances constituting fraud" including the who, what, when, where, and how. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Beyond failing to establish any false statement or omission of material fact (as addressed above in § I), Plaintiffs fall short of alleging any of the other necessary elements for intentional misrepresentation, let alone with the required "particularity" under Rule 9(b). Specifically, they do not plead fraudulent intent or the necessary scienter, i.e., "knowledge by the defendant that a statement he has made is false." *Ollivier v. Alden*, 634 N.E.2d 418, 424 (Ill. App. 1994). "While Rule 9(b) allows state of mind to be pled generally, [the Plaintiff] must still identify 'specific, objective manifestations of fraudulent intent.'" *PRM Realty Grp. v. Wood*, 2002 WL 1792063, at

---

[7] The law in other states require the same elements. *See Broge v. ALN Int., Inc.*, 2018 WL 6308194, at *5 (N.D. Cal. Dec. 3, 2018) (Cal.); *McDonald v. Elkholy*, 2017 WL 3503385, at *10 (E.D.N.Y. July 27, 2017) (N.Y.); *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 35–36 (D.D.C. 2015) (D.C.).

16

*2 (N.D. Ill. Aug. 5, 2002) (quoting *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992)). Yet, the Complaint's allegations regarding intent and scienter are entirely conclusory, requiring dismissal of this claim, particularly under Rule 9(b). *See* Compl. ¶ 72 ("McDonald's willfully, falsely, and knowingly misrepresented various material facts"); *id.* ¶ 82 ("McDonald's wrongful actions and inactions were deliberate and done with the intent to defraud"). This Court has held that similar conclusory allegations are insufficient. *See Lederman*, 2022 WL 3573034, at *6 ("conclusory and non-factual" assertions of fraudulent intent "not enough").

## B.  Plaintiffs Fail to State a Claim for Fraud (Count IV).

Plaintiffs' fraud claim fails for the same reasons. To state a claim for fraud, Plaintiffs must plead: (1) statements of material facts were made; (2) McDonald's knew or believed such statements to be untrue; (3) Plaintiffs had a right to rely or were justified in relying upon those statements; (4) the statements were made for the purpose of inducing Plaintiffs to act or rely upon them; and (5) Plaintiffs were damaged as a result of their reliance upon said statements." *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 308–09 (2002).[8] Each of these elements must be pled with particularity under Rule 9(b). *See Camasta*, 761 F.3d at 736–37 (applying Rule 9(b) to fraud claim).

As discussed above, Plaintiffs fail to allege any false statements or omissions of material fact by McDonald's. Moreover, they also fail to plausibly allege that McDonald's knew of any untrue statement nor that it made any such statement with the intent to induce reliance. They again rely solely on wholly conclusory allegations, which are insufficient to support the required

---

[8] Plaintiffs generally assert four Common Law Fraud claims. For purposes of this Motion and to the extent the Court finds that the law of each named Plaintiff's home state applies to these common law claims based on a choice of law analysis, the elements for common law fraud in California, New York, and D.C. are materially similar to Illinois. *See, e.g.*, *West v. Rheem Mfg. Co.*, 765 F. Supp. 3d 976, 990-91 (C.D. Cal. 2025) (common law fraud in California); *Fezzani v. Bear, Stearns & Co., Inc.*, 384 F. Supp. 2d 618, 647 (S.D.N.Y. 2004) (common law fraud in New York); *Virginia Acad. of Clinical Psychologists v. Group. Hosp. & Med. Servs., Inc.*, 878 A.2d 1226, 1233 (D.C. 2005) (common law fraud in D.C.).

elements of fraud under Rule 9(b)'s heightened pleading standard. *See, e.g.*, Compl. ¶ 97 ("McDonald's knowingly marketed and sold the McRib in a misleading manner."); *id.* ¶ 101; *Tricontinental Indust. v. PricewaterhouseCoopers*, 475 F.3d 824, 841 (7th Cir. 2007) (plaintiff's claim for common-law fraud was properly dismissed where plaintiff did not adequately plead scienter); *Rudy*, 666 F. Supp. 3d at 723 (same).

### C. Plaintiffs Fail to Allege Fraudulent Omission or Concealment (Count I).

In order to state a claim for fraudulent concealment, a plaintiff must meet the requirements for a claim of fraudulent misrepresentation (Plaintiffs do not do so here, as discussed above) and also demonstrate "that the defendant concealed a material fact when he was *under a duty* to disclose that fact to plaintiff." *Toulon*, 877 F.3d at 737 (affirming dismissal of fraudulent omission claim). Fraudulent concealment claims are likewise subject to Rule 9(b)'s heightened pleading standard. *See Publications Int'l Ltd. v. Mindtree Ltd.*, 2014 WL 3687316, at *5-6 (N.D. Ill. July 24, 2014) (applying Rule 9(b) to fraudulent omission). The relevant duty to disclose arises only in certain situations. Namely, where the "plaintiff and defendant are in a fiduciary or confidential relationship" or "where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018) (dismissing fraudulent concealment claim). "[T]he standard for identifying a special trust relationship is extremely similar to that of a fiduciary relationship." *Toulon*, 877 F.3d at 738; *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) (courts "have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one"). Plaintiffs again do not allege, because they cannot, that McDonald's had any such duties, requiring dismissal of Count I.

**D.      Plaintiffs Fail to State a Negligent Misrepresentation Claim (Count III).**

To state a claim for negligent misrepresentation Plaintiffs must show: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance, (6) when the party making the statement is under a duty to communicate accurate information. *Guaranty Residential Lending, Inc. v. Int'l Mortgage Ctr.*, 305 F. Supp. 2d 846, 863 (N.D. Ill. 2004) (applying Illinois law).[9] As with their other claims, Plaintiffs' negligent misrepresentation claim is conclusory and speculative. Plaintiffs baldly claim that "McDonald's negligently and recklessly misrepresented and omitted material facts about the McRib," and nothing more. Compl. ¶ 86. They plead no facts supporting the suggestion of negligence. This bare assertion does not meet the threshold required to allege any negligence.

To satisfy the last element of negligent misrepresentation, Plaintiffs must allege that McDonald's had a duty to communicate accurate information. *Tricontinental Indus.*, 475 F.3d at 833–34 (7th Cir. 2007). Setting aside the fact that McDonald's has always communicated accurate information about the ingredients in the McRib, in the context of negligent misrepresentation the Illinois Supreme Court only recognizes such a duty "where necessary to avoid negligently conveying false information; *Chiappetta*, 2022 WL 602505, at *10 (dismissing request for injunctive relief where plaintiff now knew contents of product's filling and so was unlikely to be harmed by packaging in future); that results in physical injury to a person or harm to property, or to avoid negligently conveying false information where one is in the business of supplying information for the guidance of others in their business transactions." *BCBSM, Inc. v. Walgreen*

---

[9] Other states require the same elements. *See Gallagher v. New York City Health and Hosp. Corp.*, 2017 WL 4326042, at *7 (S.D.N.Y 2017) (NY); *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015) (D.C.); *National Union Fire Ins. Co. of Pittsburg, PA v. Cambridge Integ. Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 50 (2009) (Cal.).

*Co.*, 512 F. Supp. 3d 837, 854 (N.D. Ill. 2021) (noting a pharmacy is not in business of supplying information while "lawyers, inspectors, and accountants" are); *see also First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 339 (2006) (for purposes of assessing this factor "focus must be on whether the defendant is in the business of supplying *information* as opposed to providing something tangible"; there is no duty when information supplied "is merely ancillary to the sale of a product"). Plaintiffs have not alleged either type of duty on the part of McDonald's.

Plaintiffs' negligent misrepresentation claim is also barred by the economic loss rule, which "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Rudy*, 666 F. Supp. 3d at 722 (dismissing negligent misrepresentation claim as barred by economic loss doctrine); *see also Wigod*, 673 F.3d at 574 (same); *Turner v. GAC Star Quality, LLC*, 671 F. Supp. 3d 897, 906 (N.D. Ill. 2023) (same).[10] Plaintiffs allege nothing more than "purely economic loss" so their claim is barred.

There is a narrow exception to the economic loss doctrine for negligent misrepresentation by one "in the business of supplying information for the guidance of others in their business transactions." *Rudy*, 666 F. Supp. 3d at 722. Plaintiffs' conclusory pleadings aside, courts "have consistently held that manufacturers of tangible noninformational goods . . . are not in the business of supplying information." *Orix Credit All., Inc. v. Taylor Mach. Works, Inc.*, 125 F.3d 468, 475 (7th Cir. 1997); *Karlinski*, 616 F. Supp. 3d at 767 (dismissing negligent misrepresentation claim because "[t]he end result between the Plaintiff and Defendant's relationship was a bar of ice cream, a tangible object. Accordingly, Defendant was not in the business of supplying information" and exception to economic loss doctrine did not apply). McDonald's plainly is not in the business of

---

[10] *See also Zeigler v. WellPet LLC*, 526 F. Supp. 3d 652, 689 (N.D. Cal. 2021) (negligent misrepresentation claim barred by economic loss doctrine in CA); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (same).

20

supplying information, its business is selling food products, so the negligent misrepresentation claim fails as a matter of law. *See Rudy*, 666 F. Supp. 3d at 723 (cookie manufacturer's "main business is selling its products and not supplying information to consumers" for purposes of economic loss doctrine).

## III. Plaintiffs' Warranty, Contract, and Unjust Enrichment Claims Fail for Additional Reasons As Well.

Plaintiffs' claims for breach of express and implied warranty, breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment also should be dismissed for the reasons stated above—Plaintiffs' failure to allege any deceptive conduct—and each independently fail for the below further reasons.

### A. Plaintiffs' Warranty Claims Fail for Lack of Pre-suit Notice (Counts V & VI).

Both warranty claims fail at the outset because a plaintiff buyer pursuing a breach of warranty claim under the UCC must give the seller pre-suit notice of the claimed breach or be barred from recovery. *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007); Cal. Com. Code § 2607(3)(A); NY U.C.C. § 2-607(3)(a); D.C. Code § 28:2-607(3)(a). Here Plaintiffs do not allege they gave McDonald's notice of any alleged breach of warranty before filing suit. Neither exception applies here, because there was no defect with the McRib, and Plaintiffs allege no physical injury. This alone defeats both warranty claims. *See Rudy*, 666 F. Supp. 3d at 721 (dismissing express and implied warranty claims for failure to give pre-suit notice, noting plaintiff must give notice of their "particular" transaction).

### B. McDonald's Had No Reason to Know of Any "Particular Purpose" for the McRib, Defeating Plaintiffs' Implied Warranty Claim (Count V).

Plaintiffs' implied-warranty claim requires them to plausibly allege that: "(1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the

buyer's reliance on its skill and judgment." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d at 957 (citation omitted).[11] Critically, "the goods must be for a purpose other than their ordinary use." *Id.* Here, Plaintiffs do not allege their intended use of the McRib was different from its ordinary use—eating—or allege any facts suggesting McDonald's knew they intended only to eat McRibs that contained "actual pork rib meat." Compl. ¶¶ 109, 111. Thus, their implied-warranty claim fails. *See In re McDonald's French Fries Litigation*, 503 F. Supp. 2d at 957 (dismissing implied-warranty claim about french fries for the same reasons).

### C. Plaintiffs Fail to State an Express-Warranty Claim Because the Name "McRib" is Not an Affirmation of Fact or Promise (Count VI).

An express-warranty claim requires, among other things, allegations that plausibly describe the terms of the warranty and a breach or failure of the warranty. *Ibarrola*, 83 F. Supp. 3d at 759–60.[12] Because express warranties are contractual in nature, Plaintiffs must also allege that McDonald's made an affirmation of fact, promise, or description about the McRib that became a part of the basis of the bargain. *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 2018 WL 4030586, at *6 (N.D. Ill. Aug. 23, 2018). In other words, they must allege that McDonald's made an express affirmation that the McRib contains rib meat. They fail to do so. First, their allegations are again conclusory. *See* Compl. ¶ 120. Second, McDonald's accurately lists the ingredients in the McRib and does not represent that the McRib contains rib meat. *See McKinnis*, 2007 WL 4766060, at *5. Last, courts have held that a trademarked name does not create an express warranty. *See Muller*, 683 F. Supp. 3d at 937–38

---

[11] *See Mathison v. Bumbo*, 2008 WL 8797937, at *11 (C.D. Cal. 2008) (Cal.); *Marache v. Akzo Nobel Coatings, Inc.*, 2010 WL 908467, at *17 (S.D.N.Y. 2010) (N.Y.); *Erie Insurance Co. v. W.M. Barr & Co., Inc.*, 523 F. Supp. 3d 1, 11-12 (D.D.C 2021) (D.C.).

[12] *Rugg v. Johnson & Johnson*, 2018 WL 3023493, at *4 (N.D. Cal. 2018) (Cal.); *Avis Budget Car Rental, LLC v. JD2 Env., Inc.*, 2016 WL 3251394, at *10 (E.D.N.Y. 2016) (N.Y.); *Kubicki on Behalf of Kubick v. Medtronic, Inc.*, 293 F. Supp. 3d 129, 191 (D.D.C. 2018) (D.C.).

(holding Smokehouse® name did not create express warranty because it was "not a 'statement of fact' about the kind or quality of the almonds, and it is not otherwise a 'promise' or a 'description of' the almonds"); *Lisowski v. Henry Thayer Co., Inc.*, 501 F. Supp. 3d 316, 329 (W.D. Pa. 2020) (case law addressing the issue "uniformly holds that a trademark cannot create an express warranty"); *Boyd v. TTI Floorcare N. Am.*, 230 F. Supp. 3d 1266, 1278 (N.D. Ala. 2011) (product name "akin to sales talk and puffery" not "description of a product, a promise, or an affirmation of fact"). The same is true here.

### D. Plaintiffs' Contract Claims Fail Because They Fail to Plausibly Allege that McDonald's is in Breach (Counts VII and VIII).

To succeed on a breach of contract theory in Illinois (and other states), "a plaintiff must prove (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Thomas v. Today's Growth Consultant, Inc.*, 2018 WL 3496095, at * 2 (N.D. Ill. July 20, 2018). For the same reasons explained above, Plaintiffs do not allege that the product name "McRib" was an enforceable promise or affirmation that the product would contain rib meat. The only alleged contract between Plaintiffs and McDonald's involved an exchange of money for a McRib sandwich. Both sides performed that contract. *See* Compl. ¶¶ 131–32; *see also City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 767 (N.D. Ill. 2019) ("contractual terms that are too vague or indefinite are not enforceable" because a court cannot "ascertain what the parties have agreed to do").

To state a claim for breach of the implied covenant of good faith and fair dealing in Illinois, Plaintiffs must allege: (1) the existence of an enforceable contract; (2) breach of a specific duty imposed by the contract "other than the covenant of good faith and fair dealing"; (3) that defendant failed to exercise its contractual discretion reasonably and with proper motive; and (4) resultant damages. *City of Rockford*, 360 F. Supp. 3d at 768. Notably, Illinois does not recognize a separate cause of action for breach of the duty of good faith and fair dealing but rather uses the principle

23

"as a construction aid in determining the intent of the contracting parties." *Id.* Even then, the principle only applies: "Where the contract vests one of the parties with discretion in performing an obligation, and that party exercises that discretion in bad faith, unreasonabl[y] or in a manner inconsistent with the reasonable expectations of the parties." *Id.* at 769 (quotation and citation omitted).

Plaintiffs' implied-covenant claim is deficient for two additional reasons. First, they plead it as an independent cause of action, which they cannot do. *See id.*; *LaSalle Bank Nat'l Assoc. v. Paramont Properties*, 588 F. Supp. 2d 840, 853 (N.D. Ill. 2008). Second, Plaintiffs' allegations do not reference any particular section of the purported "contract" that vests McDonald's with any discretion in performing its obligations. Instead, they make one conclusory allegation that McDonald's actions were "objectively unreasonable considering its conduct." Compl. ¶ 142. Count VIII fails for these independent reasons.

### E. Plaintiffs' Unjust Enrichment Claim Fails For Several Additional Reasons (Count IX).

Plaintiffs' claim for unjust enrichment also fails as a matter of law for several independent reasons. *First*, under Illinois law unjust enrichment is "not a separate cause of action" and so is tied to the fate of Plaintiffs' other claims, each of which fail for the reasons set forth herein.[13] *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739–40 (7th Cir. 2019); *see also Benson*, 944 F.3d at 648; *Pirelli*, 631 F.3d at 447 (in Illinois unjust enrichment is not "separate cause of action").

*Second*, a plaintiff cannot claim a defendant has been unjustly enriched unless they show the defendant benefited to their detriment and that defendant's retention of profits would violate the fundamental principles of justice, equity, and good conscience. *Oshana v. Coca-Cola Co.*, 472

---

[13] Likewise, under California law, unjust enrichment is not a separate cause of action. *See Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 997 (N.D. Cal. 2010). While unjust enrichment may be maintained as an independent cause of action under New York and D.C. law, Plaintiffs' claim fails under those states' laws for the other reasons outlined.

F.3d 506, 515 (7th Cir. 2006). In the absence of any deception by McDonald's, as discussed above, the requisite violation of "fundamental principles of justice, equity, and good conscience" is not present. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir. 2001). And because Plaintiffs' unjust-enrichment claim is based on allegations of fraudulent conduct, it also is subject to Rule 9(b)'s particularity requirement. *Pirelli*, 631 F.3d at 447. The facts underlying the unjust enrichment claim are the same as those supporting Plaintiffs' insufficiently pled fraud claims, and their unjust enrichment claim is deficient for the same reasons.

*Third*, even if Plaintiffs' other claims were not deficient (but they are) the unjust enrichment claim still fails because equitable relief is not available "where the conduct at issue is the subject of an express contract." *Cohen v. Am. Sec. Inc. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006) (unjust enrichment claim "unavailable where the claim rests on the breach of an express contract"). Here, the crux of Plaintiffs' claims centers on their purchase of the McRib, which was governed by a sales contract. That express sales contract precludes Plaintiffs' claim for unjust enrichment. *See Cohen*, 735 F.3d at 615; *Berarov v. Archers-Daniels-Midland Co.*, 2019 WL 277717, at *11 (N.D. Ill. Jan. 22, 2019) (citing 810 ILCS 5/2-204) (dismissing unjust enrichment claim premised on "money paid in exchange for a product, i.e., on a contract for the sale of goods"). Plaintiffs make no effort to disavow the sales contract (*see* Compl. ¶¶ 145–50), nor can they, as their unjust enrichment claim is necessarily premised on their "purchase" of the McRib (*see id.* ¶ 148). They thus cannot plead unjust enrichment, requiring dismissal of that claim. *See Cohen*, 735 F.3d at 615 (explaining that pleading unjust enrichment in the alternative is permitted only if the plaintiff can alternatively plead the absence of an express contract). Moreover, because the sale of the McRib is governed by an express sales contract, the remedies (if any) are legal not equitable. *Id.*

## IV. The Court Should Dismiss All Claims Seeking Equitable Relief.

Finally, even if Plaintiffs could state a claim, they allege no basis for any equitable remedy.

### A. Plaintiffs Lack Standing to Pursue Injunctive Relief.

Plaintiffs lack standing to pursue injunctive relief. To establish the requisite injury-in-fact for injunctive relief, "a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future." *Camasta*, 761 F.3d at 74; *see also Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (plaintiff seeking injunctive relief must allege "real and immediate threat" of future injury). Where a plaintiff is now aware of the defendant's "sales practices, he is not likely to be harmed by the practices in the future" and cannot show a real and immediate threat of future harm. *Camasta*, 761 F.3d at 741; *Chiappetta*, 2022 WL 602505, at *10 (dismissing request for injunctive relief where plaintiff now knew contents of product's filling and so was unlikely to be harmed by packaging in future). Plaintiffs cannot allege a real or immediate threat of future harm, because they are now aware of the ingredients in the McRib (if they weren't already).

### B. Plaintiffs Cannot Seek Restitution, Requiring Dismissal of Their UCL and FAL Claims (Counts XI and XII).

The Court should also dismiss Plaintiffs' claims under the UCL and FAL, which seek equitable relief in the form of restitution, because Plaintiffs fail to demonstrate that they lack "an adequate remedy at law." *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Acosta-Aguayo v. Walgreens Co.*, 2023 WL 2333300, at *8 (N.D. Ill. Mar. 2, 2023) (dismissing claims for restitution because plaintiffs failed to allege lack of an adequate remedy at law). Plaintiffs seek legal damages for their other claims, and do not even attempt to allege that damages would be an inadequate remedy for their alleged loss. Thus, the Court should dismiss any claims for restitution.

26

## CONCLUSION

The Court should dismiss Plaintiffs' Complaint in its entirety with prejudice. No amendment can change the fact that the McRib name, shape, and marketing are not deceptive.

Dated: February 26, 2026        MCDONALD'S CORPORATION

                     By:   */s/ Riley C. Mendoza*

                       Riley C. Mendoza
                       Tara D. Kennedy
                       SHOOK, HARDY & BACON L.L.P.
                       111 South Wacker Drive, Suite 4700
                       Chicago, IL 60606
                       (312) 704-7700
                       rmendoza@shb.com
                       tkennedy@shb.com

                       James P. Muehlberger
                       SHOOK, HARDY & BACON L.L.P.
                       2555 Grand Blvd.
                       Kansas City, MO 64108
                       (816) 474-6550
                       jmuehlberger@shb.com

                       ***Attorneys for Defendant McDonald's Corporation***

27

<u>**CERTIFICATE OF SERVICE**</u>

I, Riley C. Mendoza, an attorney, hereby certify that on **February 26, 2026**, I caused a true and correct copy of **DEFENDANT MCDONALD'S CORPORATION'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT** to be filed electronically. Notice of this filing will be sent to all parties registered on this Court's CM/ECF system. Parties may access this filing through the Court's system.

*/s/ Riley C. Mendoza*