**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PETER LE, CHARLES LYNCH, DORIEN BAKER, and DARRICK WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MCDONALD'S CORPORATION d/b/a MCDONALD'S, and DOES 1 through 10,<br><br>Defendants. | ) | No. 25-cv-15609<br><br>Judge April M. Perry |

**OPINION AND ORDER**

Peter Le, Charles Lynch, Dorien Baker, and Darrick Wilson ("Plaintiffs") bring this putative class action lawsuit against McDonald's Corporation ("Defendant"), alleging four common law fraud claims (Counts I–IV), four contract-based claims (Counts V–VIII), a claim for unjust enrichment (Count IX), and seven consumer deception claims under four states' consumer protection laws (Counts X–XVI). Doc. 21. Before this Court is Defendant's motion to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 24.[1] For the reasons discussed below, Defendant's motion is granted in part and denied in part.

---

[1] Defendant's brief in support of its motion was twenty-seven pages long, substantially more than the fifteen pages allowed by Local Rule 7.1. Going forward, the Court expects that Defendant will comply with all local rules.

## BACKGROUND[2]

Since 1981, Defendant has periodically offered its "McRib" sandwich on a limited-time basis at select McDonald's locations. Doc. 21 ¶ 19. Defendant's website states that the McRib "starts with seasoned boneless pork dipped in a tangy BBQ sauce, topped with slivered onions and tangy pickles, all served on a toasted homestyle bun." Doc. 24-1 at 3.[3] The "McRib Pork Patty" used in the sandwich is shaped to resemble a half rack of ribs, as pictured below:



Doc. 21 ¶ 21. But despite its name and shape, the McRib does not contain any rib meat, which Plaintiffs define as a "premium" cut of meat "derived from the muscle and fat found on a pig's rib cage." *Id.* ¶¶ 2–4. Rather, Plaintiffs allege the McRib is made with "lower-grade pork products," including "pork shoulder, heart, tripe or scalded stomach." *Id.* ¶ 9.

---

[2] For purposes of this motion to dismiss, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016).

[3] Plaintiffs cite to Defendant's website in the complaint, and the Court may consider "documents that are central to the complaint and … referred to in it." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Defendant's website does not clarify matters, describing the "McRib Pork Patty" ingredients only as "Pork, Water, Salt, Dextrose, [and] Rosemary Extract." Doc 24-1 at 4. Nowhere does Defendant identify the specific cut of pork used in the sandwich, nor does it disclose in any of its marketing materials or on its menus that the sandwich contains no rib meat. Doc. 21 ¶¶ 25, 28.

When the McRib is offered, it is one of the most expensive individual menu items at McDonald's. *Id.* ¶ 39. According to Plaintiffs, the premium price buttresses consumers' belief that the McRib contains rib meat, which is a more expensive cut. *Id.* ¶ 5. In support of this allegation, Plaintiffs cite the U.S. Department of Agriculture's National Daily Pork Report, which provides a daily summary of pork prices by cut and consistently reports that pork "rib" meat is valued higher than other cuts. *Id.* ¶ 4. Plaintiffs, each of whom purchased a McRib in late 2024, allege that they would not have made those purchases or would have been willing to pay substantially less for the McRib had they known it contained no rib meat. *Id.* ¶¶ 7, 40.

Plaintiffs allege that the combination of the McRib's name, shape, marketing, limited availability, and premium price causes reasonable consumers to mistakenly believe the sandwich contains the more expensive rib meat. *See e.g.*, *id.* ¶¶ 5, 9, 22, 41. In support of this claim, Plaintiffs provide the results of two consumer surveys conducted by Plaintiffs' "survey expert," who presented consumers with an image of a McRib advertisement taken from a McDonald's menu. *Id.* ¶ 31. In the first survey, 72% of respondents (155 of 215) indicated that they expected the McRib to contain rib meat. *Id.* In the second, 67% of respondents (118 of 174) reported that it was either "important" or "very important" to their purchasing decision that the McRib contained rib meat. *Id.* ¶ 33.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive such a motion, a plaintiff need only include "'a short and plain statement' of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level" and must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). "Threadbare recitals" of the elements of a cause of action and allegations that are merely legal conclusions are insufficient. *See Iqbal*, 556 U.S. at 678.

Claims sounding in fraud are subject to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a pleading to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). While the level of particularity required depends upon the case, Rule 9(b) "ordinarily requires describing the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (citation omitted). One of the purposes of the heightened standard is "to force the plaintiff to do more than the usual investigation before filing his complaint." *Id.* (quotation omitted).

## ANALYSIS

### A. Consumer Deception Claims (Counts X–XVI)

The Court begins with the seven consumer deception claims brought under California, New York, Illinois, and District of Columbia law. *See* Doc. 21 at 30–42. Specifically, the complaint alleges violations of California's Consumer Legal Remedies Act, Cal. Civ. Code §

1750 *et seq*. (Count X); California's False and Misleading Advertising Law, Cal. Bus. & Prof Code § 17500, *et seq*. (Count XI); California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. (Count XII); New York's Unlawful Deceptive Act and Practices Law, General Business Law § 349 (Count XIII); New York's False Advertising Law, General Business Law § 350 (Count XIV); Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. (Count XV); and the District of Columbia's Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq*. (Count XVI). *Id*. Although there are distinctions among these laws, each requires a plaintiff to allege a deceptive or unfair act or practice. *See Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474–475 & n.1 (7th Cir. 2020). In other words, a plaintiff must plausibly allege that the defendant's actions "'are likely to deceive reasonable consumers,' which 'requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (citation omitted). In this case, Defendant argues that Plaintiffs have failed to plausibly allege any such deception.

Whether a statement is deceptive is an issue of fact typically not appropriate for resolution on a motion to dismiss. *See Mead Johnson & Co. v. Abbott Laboratories*, 209 F.3d 1032, 1034 (7th Cir. 2000). Dismissal is appropriate only if the challenged statement was not deceptive as a matter of law. *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001). More specifically, if a deception claim is based "on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell*, 982 F.3d at 477. When determining whether a proposed interpretation is unreasonable or fanciful, courts "take into account all the information available to consumers and the context in which that information is provided and used." *Id.*

Defendant argues that in this case any claim of deception is unreasonable because Defendant has never represented that the McRib contains pork rib meat, and instead truthfully described the McRib as a "boneless pork" sandwich with a patty that is made from "pork." But the fact that Defendant's affirmative statements were literally true does not mean that they could not also be deceptive: "the law has long recognized that even literally true claims may deceive, that implied messages in advertising may deceive, and that what matters is how consumers actually understand the advertising." *Bell*, 982 F.3d at 479. Here, Plaintiffs allege not that they were misled about whether the product contained pork, but whether it contained pork rib. Specifically, Plaintiffs point to the fact that the sandwich was named the Mc*Rib*, was shaped like pork ribs, and was sold at a premium price for a limited time. Moreover, while Defendant did not state that the product contained rib meat, it also did not disclose anywhere that there was no rib meat used. Finally, Plaintiffs' consumer survey results indicated that consumers could actually be deceived by the marketing images. At this stage, taking all of Plaintiffs' pled facts as true and drawing all reasonable inferences in Plaintiffs' favor, the Court cannot conclude that it would be unreasonable for a consumer to believe that the McRib contains rib meat.

The Court is not persuaded by Defendant's many arguments that it would be unreasonable or fanciful to think the McRib contains rib meat. While it is true that Defendant acquired a trademark on the name "McRib" and that a prerequisite for acquiring a trademark is that the mark not be "deceptively misdescriptive" of the good, 15 U.S.C. § 1052(e), a trademark does not immunize the holder from future claims of deception. *See, e.g.,* 15 U.S.C. § 1125(a)(1) (authorizing cause of action against deceptive names); 15 U.S.C. § 1064 (allowing petition to cancel registration of a trademark based upon deception). Similarly uncompelling is Defendant's argument that the fact that McRib is trademarked means that it cannot be considered "an

actionable representation of ingredients" because this "would punish the very distinctiveness trademark law encourages and is designed to protect." Doc. 24 at 19. In *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 14 (7th Cir. 1992), the Seventh Circuit implicitly rejected such a theory when it upheld the district court's finding that the trademarked name "Ricelyte" conveyed the message that the product contained rice. The Seventh Circuit reached this conclusion in part because the defendant's "promotional campaign play[ed] up Ricelyte's association with rice." *Id.* at 10. The same is arguably true here when considering the McRib's name, shape, and marketing.

Defendant also argues that the addition of the "Mc" onto the front of the product name is meant only to "identify the source" of the product as being from McDonald's. While the Court agrees that the prefix "Mc" does indicate that the product is from McDonald's, the alleged problem is not the prefix but the suffix. And when it comes to McDonald's product names, the suffix is often descriptive of what the product contains. For example, the McChicken sandwich is made with chicken, and the Egg McMuffin is made with an English muffin.[4] Certainly that is not always the case—McDonald's dinosaur nuggets did not contain dinosaur meat, and the McFlurry does not come accompanied by a small snowstorm. But on the spectrum of literal to symbolic, the McRib is arguably much closer to the literal, given that rib meat actually exists in a way that dinosaur meat and tiny snowstorms in a cup do not.

Defendant next argues that the totality of information and context available to consumers make it such that no reasonable consumer could expect the McRib to contain rib meat. First, Defendant points to the fact that the McRib's ingredients are publicly available on Defendant's

---

[4] McDonald's, McChicken®, https://perma.cc/H5R8-MG4U (last visited Oct. 29, 2026); McDonald's, Egg McMuffin®, https://perma.cc/8JXT-GEAE (last visited Oct. 29, 2026).

website. But the website describes the sandwich only as containing pork; it does not inform consumers of the specific cut of meat used (or not used). And in any event, "[c]onsumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities . . . ."[5] *Bell*, 982 F.3d at 476. Defendant further argues that reasonable consumers could not be deceived because the McRib has been sold for over forty years and its contents "are the subject of frequent publicized reporting." Doc. 24 at 23. But consumers are not required to consult publicly-available sources before making purchases, and the reasonable consumer does not necessarily do research before buying a $7 fast food item. Defendant cites no binding precedent holding that it would be unreasonable as a matter of law for consumers to be deceived where the challenged practice has been reported on by third parties, and the Court is not aware of any.[6]

Finally, Defendant takes issue with aspects of Plaintiffs' consumer surveys, claiming that they are "methodologically opaque." Doc. 24 at 25. But a motion to dismiss is not the appropriate time to challenge the merits of an alleged fact, and Plaintiffs are not required to plead all of the underlying data that support their allegations. In *Bell*, the Seventh Circuit rejected exactly this sort of challenge on a motion to dismiss, noting that survey data creates questions "of fact, subject to proof that can be tested at trial." 982 F.3d at 481. The same is true here.

In sum, Defendant asks this Court to decide that Defendant's actions could not deceive a reasonable consumer as a matter of law. But because Plaintiffs' proffered understanding of

[5] Defendant's citation to a single posting from 2022 on Defendant's website that states, "Why the shape of a rack of ribs? Easy...it's fun." is unconvincing for this same reason. *See* McDonald's, How is your McRib® patty formed?, https://perma.cc/B8SH-SRKP (Feb. 28, 2022).

[6] Defendant's assertion that reasonable consumers clearly are not concerned with the absence of pork rib meat because sales do not drop after articles are published stating that the McRib does not contain rib meat, Doc. 24 at 23, cuts both ways. The fact that sales do not drop could just as easily support Plaintiffs' argument that consumers do not read articles before eating at McDonald's.

"McRib" is not unreasonable or fanciful, Defendant's motion to dismiss Counts X–XVI is denied.

**B. Common Law Fraud Claims (Counts I–IV)**

Plaintiffs also assert four common law fraud claims for fraudulent omission or concealment (Count I); fraudulent misrepresentation (Count II); negligent misrepresentation (Count III); and fraud (Count IV).[7] Specifically, Plaintiff's theory of fraud is that Defendant's "naming, branding, shape, advertisements and marketing of the McRib falsely portrayed to the consuming public that the McRib contained, at least in some part, actual pork rib meat," and that Defendant omitted the fact that the sandwich does not contain any rib meat. *See* Doc. 21 ¶¶ 99–101. Defendant first argues that all of these claims are subject to dismissal because Plaintiffs have not pleaded that Defendant made a deceptive or false statement or omission. As the Court has already rejected this contention, the Court will move on to consider Defendant's remaining arguments.

**1. Fraudulent Misrepresentation and Fraud (Counts II & IV)**

Plaintiffs' fraudulent misrepresentation and fraud claims both require Plaintiffs to plead, among other things, that Defendant (1) knew or believed its representations were false (scienter) and (2) that they were made with the intent to induce Plaintiffs to act.[8] Defendant argues that Plaintiffs' scienter and intent allegations are impermissibly conclusory. For the reasons that follow, the Court disagrees.

---

[7] At this time, the Court need not engage in a choice-of-law analysis because the elements of each claim are substantially similar in each plaintiff's home state.

[8] *See, e.g.*, *PRM Realty Group v. Wood*, 2002 WL 1792063, at *2 (N.D. Ill. Aug. 5, 2002) (Illinois law); *Broge v. ALN Int., Inc.*, 2018 WL 6308194, at *5 (N.D. Cal. Dec. 3, 2018) (California); *McDonald v. Elkholy*, 2017 WL 3503385, at *10 (E.D.N.Y. July 27, 2017) (New York); *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 35–36 (D.D.C. 2015) (D.C.).

Beginning with scienter, Defendant clearly knew that the McRib does not contain rib meat. Moreover, the complaint plausibly alleges that Defendant had exclusive control over the McRib's recipe, design, pricing, and marketing. Doc. 21 ¶ 38. Plaintiffs have thus sufficiently alleged that Defendant knew that the McRib contained no rib meat and that any contrary impression conveyed was false.

Turning to intent, the complaint alleges that Defendant "systematically and deliberately withholds key material facts about the McRib, ensuring that consumers remain misled about the nature, composition, and quality of the product" and that "[t]his pattern of omission is not incidental, but part of a broader, intentional marketing strategy designed to obscure the truth and maximize sales." *Id.* ¶ 29. The complaint further identifies specific advertisements which highlight the rib-like shape of the meat and alleges that these were part of a marketing scheme intended to drive sales of the McRib. *Id.* ¶¶ 21–24. More will be required to prove fraudulent intent, but these general allegations of fraudulent intent are enough to withstand a motion to dismiss. *Cf. United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 781 n.29 (7th Cir. 2016) ("[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally" under Rule 9(b)). Defendant's motion to dismiss Counts II and IV is therefore denied.

**2. Fraudulent Concealment (Count I)**

To state a claim for fraudulent concealment under Illinois law,[9] a plaintiff must "'allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff.'" *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017) (citation omitted). "A duty to disclose may be based on a fiduciary relationship or a relationship of trust and confidence

[9] Defendant does not challenge Plaintiffs' fraudulent concealment claim under any other state's law. *See* Doc. 24 at 29.

where 'defendant [is] in a position of influence and superiority over plaintiff,'" or "it may arise when a defendant tells a half-truth and then becomes obligated to tell the full truth." *Id.* (citation omitted). Defendant argues only that Plaintiffs have not alleged a fiduciary relationship or relationship of trust and confidence between the parties, and this is true. However, Defendant does not grapple in its briefing with cases indicating that a duty to disclose also can arise when a defendant has told a "half-truth." The Court finds that Defendant's naming and marketing of the McRib, combined with the non-specific description of the sandwich as containing "pork," plausibly constitute the sort of half-truth that could give rise to a duty to disclose the whole truth: that "pork" does not include rib meat. *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009) ("[A] duty to disclose may arise . . . if the defendant makes an affirmative statement that it passes off as the whole truth while omitting material facts that render the statement a misleading 'half-truth.'"); *cf. United States v. Stephens*, 421 F.3d 503, 507 (7th Cir. 2005) (fraud "includes both statements that the defendant knows to be false, as well as a 'half truth' that the defendant knows to be misleading and which the defendant expects another to act upon to his detriment and the defendant's benefit"). Defendant's motion to dismiss Count I is therefore denied.

**3. Negligent Misrepresentation (Count III)**

To state a claim for negligent misrepresentation under Illinois law,[10] Plaintiffs must allege: "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4)

---

[10] As with the fraudulent concealment claim, Plaintiffs defend their negligent misrepresentation claim only under Illinois law. *See* Doc. 26 at 15. The Court therefore analyzes the claim under Illinois law. To the extent Plaintiffs believed another relevant state's law would have allowed the claim for a particular sub-class, they should have included such citations in their brief instead of just asserting that the analysis is "state-specific." *See id*. The Court will entertain a motion to file an amended complaint if it includes relevant citations to another state's law that is materially different from that of Illinois.

action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006). The Supreme Court of Illinois has held that when a party seeks "purely economic damages," a party has a duty "to avoid negligently conveying false information only if the party is in the business of supplying information for the guidance of others in their business transactions." *Id.* "[T]he focus must be on whether the defendant is in the business of supplying *information* as opposed to providing something tangible." *Id.* at 334 (emphasis in original). Put simply, the claim is not viable "if the information supplied is merely ancillary to the sale of a product." *Id.* at 335.

In this case, Plaintiffs seek economic damages. Therefore, to state a claim of negligent misrepresentation, Plaintiffs must plausibly allege that Defendant is in the business of supplying information as opposed to something tangible. They have not done so. Defendant is in the business of selling a product: food. Any representations made regarding the McRib were merely ancillary to the sale of that product. Defendant's motion to dismiss Count III is therefore granted.

**C. Contract-Based Claims (Counts V–VIII)**

Plaintiffs also assert four contract-based claims for breach of the implied warranty for fitness for a particular purpose (Count V); breach of express warranty (Count VI); breach of contract (Count VII); and breach of the duty of good faith and fair dealing (Count VIII). Defendant argues that Plaintiffs have failed to plausibly allege any of their contract-based claims, asserting several legal bases for dismissal. *See* Doc. 24 at 32–35. In response, Plaintiffs conflate their contract claims with their deception claims, arguing that what matters is the "reasonable consumer's" perception of the McRib. *See* Doc. 26 at 17. But what a reasonable consumer may have believed is irrelevant to whether a plaintiff and defendant formed a viable contract, and if

so, the contract's terms. In fact, Plaintiffs do not cite a single case in support of their contract-based claims. *See* Doc. 26 at 15–17. Unsupported, undeveloped, and perfunctory arguments are deemed waived. *See, e.g.*, *Hall v. Flannery*, 840 F.3d 922, 927 (7th Cir. 2016). Plaintiffs' implied warranty, express warranty, breach of contract, and breach of the duty of good faith and fair dealing claims are therefore dismissed without prejudice.[11]

**D. Equitable Relief**

**1. Unjust Enrichment (Count IX)**

Count IX brings a claim of unjust enrichment. Defendant challenges this claim on three grounds, none of which is persuasive. First, while Defendant accurately notes that unjust enrichment is not an independent cause of action under Illinois law, this argument is unavailing in light of the Court's conclusion that there are underlying causes of action that survive the motion to dismiss. Second, Defendant's argument that there is no deception or fraud to support an unjust enrichment claim also cannot succeed in light of the Court's findings. Finally, Defendant argues that there can be no recovery for unjust enrichment if a contract between the parties governs the matter at issue. While this is an accurate statement of the law, parties are permitted to plead breach of contract theories and unjust enrichment theories in the alternative. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). And in any event, the Court has dismissed all contract-related theories as implausibly pled. Defendant's motion to dismiss Count IX is therefore denied.

[11] While the Court will allow amendment of these claims, any proposed amended complaint must be accompanied by a brief that cites caselaw allowing contract-based claims like these to proceed when what is alleged is not a false statement of fact, but a literally true statement that may be misleading.

**2. Prospective Injunctive Relief**

The complaint also seeks prospective injunctive relief, which Defendant challenges for lack of standing. To "establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (citation omitted). In the consumer deception context, there is no such threat once a plaintiff is aware of the deceptive conduct at issue. *See Camasta*, 761 F.3d at 741. As Plaintiffs are all now aware that the McRib does not contain any rib meat, they cannot plausibly allege they will be harmed in the future by Defendant's marketing of the sandwich. Moreover, Plaintiffs have alleged that they do not even want to purchase the McRib unless it contains rib meat or is sold at a "substantially reduced price," Doc. 21 ¶ 229, neither of which seem likely to happen anytime soon. Plaintiffs' requests for injunctive relief are dismissed for lack of standing.

**3. Restitution Requests (Counts XI and XII)**

Finally, Defendant argues that Plaintiffs cannot seek restitution for their California Unfair Competition Law and False Advertising Law claims because they do not plausibly allege that Plaintiffs lack an adequate remedy at law. Defendant's sole support for this argument comes from the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Defendant cites no case in which the Seventh Circuit has adopted *Sonner*, and the Court has not seen one. While it is clear that Plaintiffs could not recover both an equitable remedy and a remedy at law for the same misconduct, it frankly seems premature to ponder remedies given the numerous sub-classes and causes of action potentially at issue. Defendant's motion to dismiss Counts XI and XII is therefore denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part. Counts III, V, VI, VII, and VIII are dismissed without prejudice. Plaintiffs' requests for prospective injunctive relief are dismissed for lack of standing. All other claims remain pending.

April M. Perry

Dated: October 30, 2026

APRIL M. PERRY
United States District Judge